**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JOHN L. BUNIFF**                                                          **CIVIL ACTION**

**VERSUS**                                                                     **NO. 07-1779**

**BURL CAIN, WARDEN**                                          **SECTION "B"(6)**

<u>**ORDER AND REASONS**</u>

Petitioner John L. Buniff's ("Petitioner") written objections (Rec. Doc. 36) to the Report and Recommendation (Rec. Doc. 35) of United States Magistrate Judge Louis Moore, Jr. are overruled. That Report is adopted as the opinion of the Court.   The habeas corpus petition is dismissed with prejudice.

Petitioner is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On September 25, 2000, he was convicted of second-degree murder in violation of Louisiana law.   On December 14, 2000, he was sentenced to a term of life imprisonment without benefit of parole, probation, or suspension of sentence.   On December 30, 2002, the Louisiana Fifth Circuit Court of Appeal affirmed his conviction.   The Louisiana Supreme Court denied his related writ application on May 9, 2003, thus making his state conviction final.

On May 7, 2004, petitioner, through counsel, filed with the state district court an application for post-conviction relief. That application was denied on August 10, 2004, without an evidentiary hearing.   The Louisiana Fifth Circuit Court of Appeal

1

subsequently granted petitioner's related writ application and remanded the matter for an evidentiary hearing.  Petitioner then filed a supplemental post-conviction application on February 28, 2005, and an evidentiary hearing was held on May 2, 2005.  The state district court again denied relief on November 28, 2005, and petitioner's related writ applications were denied by the Louisiana Fifth Circuit Court of Appeal on March 24, 2006, and the Louisiana Supreme Court on November 22, 2006.

On April 12, 2007, petitioner, through counsel, filed this federal application for habeas corpus relief claiming that he was denied his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments, based on four claims. First, petitioner claims that his attorneys, Davidson Ehle and Jim Williams, failed to conduct reasonable pretrial investigation or adequately prepare for trial. Second, petitioner claims that his trial counsel, Davidson Ehle, failed to object to the introduction of several letters written by petitioner to his wife that were privileged, confidential communications.  Third, petitioner claims that Ehle failed to redact or edit these letters before they were presented to the jury. Finally, petitioner claims that trial counsel failed to argue the responsive verdict of manslaughter.

A Report and Recommendation was issued by Magistrate Louis Moore, Jr., recommending that the petition be dismissed with prejudice for being untimely filed.  The Report and Recommendation

2

was adopted by this Court after objections were overruled and petitioner appealed.  The United States Fifth Circuit Court of Appeals remanded the case, noting that a decision rendered by that court in *Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009), after this Court decided the case, altered the time-bar analysis to be employed.  Therefore, the Fifth Circuit vacated the district court's judgment and remanded the matter for consideration. The State was then ordered to and did file a "Supplemental Response in Opposition to Granting Writ of Habeas Corpus," Rec. Doc. 34. A second Report and Recommendation was issued by Magistrate Moore (Rec. Doc. 35), recommending that the petition be dismissed with prejudice, and petitioner then timely filed objections to the Magistrate's Report (Rec. Doc. 36) and requested review by this Court.

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), federal courts "defer to a state court's adjudication of a petitioner's claims on the merits unless the state court's decision was: (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'; or (2) 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Gray v. Epps*, 616 F.3d 436, 439 (5th. Cir. 2010) (quoting 28 U.S.C. § 2254(d)). "A state court's decision is deemed

contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts." *Gray*, 616 F.3d at 439. Alternatively, a state court's decision "constitutes an unreasonable application of clearly established federal law if it is 'objectively unreasonable.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). Regarding issues of fact, a determination made by a State court "shall be presumed to be correct," with the burden of rebutting the presumption of correctness by clear and convincing evidence falling on the petitioner.  28 U.S.C. § 2254(e)(1).

Petitioner fails to show that the state court's denial of post-conviction relief, based on the adjudication of his ineffective assistance of counsel claims, was contrary to, or involved an unreasonable application of, clearly established Federal law.

The benchmark for judging a habeas petitioner's claim of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance of counsel, a convicted defendant must show that (1) defense counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Id*. at 687. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether

counsel's assistance was reasonable considering all the circumstances." *Id*. at 688.   Judicial scrutiny must be "highly deferential," indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 689. However, deference does not preclude relief. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Petitioner can demonstrate deficient performance by showing that counsel's representation fell below an objective standard of reasonableness, "as reflected in American Bar Association standards and the like." *Strickland*, 466 U.S. at 688. In addition to deficient performance, Petitioner must show that the errors of counsel had more than a mere "conceivable effect" on the outcome of the proceeding; he must satisfy both prongs of *Strickland*. *Id*. at 693. Deficient performance is prejudicial when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "A reasonable probability is one sufficient to undermine confidence in the outcome." *Id*.

Petitioner alleges (1) that counsel failed to investigate potential eye witnesses identified by petitioner prior to trial; (2) that counsel failed to investigate and properly utilize petitioner's wife, Mary Hulbert, as a defense witness; and (3) that counsel failed to adequately prepare with petitioner prior to trial, which led to his failure to develop the self-defense theory at trial. Rec. Doc. No. 36, at 7-9.   These allegations were

addressed and denied during the state post-conviction process.

Nothing in petitioner's objections to the Magistrate Judge's recommendation demonstrates a reasonable probability that the outcome of the trial would have been different, but for the failure of counsel to call potential witnesses. The Fifth Circuit has established the general rule that "[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978). In order to prove ineffective assistance under *Strickland*, the petitioner must show not only that the testimony would have been favorable, but also that the witnesses would have testified at trial. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985). Petitioner contends that several uncalled witnesses would have provided favorable information to support his theory of self-defense. Rec. Doc. 36 at 8-9. He suggests that neighbors John and Lisa Russell, Alice Ruiz, and Myra Kindernecht would have testified about the victim's trips to and from the house on the day of the shooting, as well as petitioner's verbalized fear that he would be hurt by the victim. *Id*. However, these speculations are unsupported by anything other than petitioner's self-serving testimony at trial. The only evidence of a missing witness's testimony is from petitioner. The Fifth Circuit has viewed similar

claims of ineffective counsel with "great caution." *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983).

No testimony has been given by the alleged potential witnesses, nor has an affidavit summary of the testimony they would offer been submitted to the state courts or to this Court. Similarly, in *Cockrell*, no testimony was given by the missing witness, nor was an affidavit suggesting the content of his projected testimony submitted. 720 F.2d at 1427. "Speculations as to what [the witness] might have been able to contribute through his testimony are insufficient to establish a prima facie showing that [the witness's] testimony would have substantially altered the outcome of the trial." *Id*. Accordingly, petitioner's speculations here are insufficient to show that the outcome of the trial would have been different, but for the failure of counsel to call the neighbors as witnesses.

Petitioner next alleges that counsel failed to investigate and properly utilize petitioner's wife, Mary Hulbert, as a defense witness. Rec. Doc. 36 at 9. Hulbert attempted to contact defense counsel Williams with information about her husband's case in 1999 and 2000. *Id.* at 10. Petitioner now claims that she was ignored by Williams and unutilized by trial counsel Ehle to the detriment of his case. *Id.* However, petitioner erroneously asserts that Hulbert would have provided favorable information or testimony to the defense. *See* State Rec. Vol. V, Trial Transcript ("TT"), p.

7

148.  Hulbert testified at trial that she had no memory or recall of what happened the afternoon of the shooting, due to a recent medical procedure and pain medication that made her feel "very, very ill" and "out of it." TT, at pp. 148-49. She was recovering from pneumonia, kidney failure, liver failure, minor infections, and emphysema, and was unable to focus on anything going on around her. TT, at pp. 148-49.

Additionally, Ehle's testimony at the state post-conviction evidentiary hearing shows that he strategically chose not to call petitioner's wife as a witness. Evidentiary Hearing Testimony ("EHT") at pp. 11, 35-36. Ehle testified that he learned Hulbert had turned over letters that were damaging to petitioner's case to the District Attorney and that he considered that a "big tipoff" that she was not going to be a favorable defense witness. *Id.* Judicial review of such a strategic decision must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 460 U.S. at 689 (internal citation omitted). Petitioner's attorney attacks Magistrate Judge Moore's determination that Ehle strategically chose to not call Hulbert as a witness by saying deference does not mean acquiescence. Rec. Doc. 36 at 9. However, petitioner fails again to overcome the

presumption that Ehle's decision was sound trial strategy, other than reiterating speculative and unsupported allegations. *Id*. at 9-10. Petitioner's second allegation fails to overcome the deference paid to counsel's strategic decision in order to show deficient performance and fails to show prejudice.

Petitioner further alleges that counsel would have learned the importance of potentially exculpatory witnesses, called them to testify at trial, and fully developed the self-defense theory, if only he had adequately prepared with petitioner before trial. Rec. Doc. No. 36, at 9. However, this allegation is also unsupported by a showing of deficient performance and prejudice.

The failure to meet with one's client prior to trial does not automatically make the trial "inherently unfair." *United States v. Cronic*, 466 U.S. 648, 661 (1984). Petitioner bears the same burden of demonstrating deficient performance and prejudice under *Strickland* to support this allegation.

Counsel's testimony at the state post-conviction evidentiary hearing was that he met with his client three times. EHT at pp. 7-8, 35. On the day the trial began, September 19, 2000, counsel talked with his client when petitioner was brought to the trial court for a sanity hearing. *Id*. at p. 35. He also visited with Petitioner for several hours at the Jefferson Parish Correctional Center on September 20, 2000, and for less than an hour on September 22, 2000. *Id*. at pp. 7-8. Trial counsel Ehle acquired

9

petitioner's case from Jim Williams, another member of the firm retained by petitioner, one week before trial. *Id*. at pp. 7, 15-16. Ehle immediately requested a continuance of trial that was denied. *Id.*

Petitioner does not allege that any new information would have been exchanged during any pretrial meetings with Ehle.  He merely alleges that Ehle would have learned the importance of the potentially exculpatory witnesses, called them to testify at trial, and fully developed the self-defense theory. Rec. Doc. 36 at 9. In fact, petitioner's objections to Magistrate Judge Moore's report assume that Ehle had access to the case file and any and all information gleaned by prior counsel, Williams. *Id*. at 12. Petitioner again relies on his own speculation as to what uncalled potential witnesses would have testified. As addressed above, petitioner has failed to establish a prima facie showing that the testimony of uncalled witnesses would have altered the outcome of the trial, especially in view of overwhelming evidence of guilt, as cited in the state court record.  *State v. Buniff*, 837 So.2d 769 (La. App. 5 Cir. 12/30/02) (unpub. op.).

Petitioner also alleges that counsel failed to object to the introduction of several letters written by petitioner to his wife. *Id*. at 13-17.  He argues that the letters were privileged, confidential communications, that gave the jury access to prejudicial information. *Id*.  The state appellate court and the

10

Magistrate Judge found that Petitioner has not shown that, even if the letters had not been admitted, the outcome of the trial would have been different. The weight of the evidence was against petitioner's self-defense theory at trial: two eye witnesses testified that petitioner was not provoked by the victim and that petitioner was the aggressor; evidence was admitted that showed that petitioner called the police but never reported the alleged threats by the victim or the victim's alleged assault with a firearm; a search of the area, the victim, and the victim's car failed to turn up a weapon allegedly used by the victim to assault petitioner; and the only evidence admitted supporting petitioner's self-defense theory was his own self-serving testimony. *See State v. Buniff*, 02-567 (La. App. 5 Cir. 12/30/02), 837 So.2d 769 (unpublished), after a review of the record.  Petitioner's objections focused on the actions taken by trial counsel and why the letters should not have been admissible, devoting only one sentence out of four and a half pages to point out that they "contained information that the jury could ultimately use in determining guilt," Rec. Doc. 36 at 16. The objections failed to address how or why the outcome of the trial would have been different if the letters had not been admitted.  Again, petitioner fails to show that the state court's denial of claims here was contrary to, or involved an unreasonable application of, clearly established federal law.

Similarly, petitioner also alleges that counsel failed to redact or edit the letters from petitioner to his wife before they were presented to the jury, allowing the jury to hear the damaging information in the letters. Rec. Doc. No. 36, at 17-18. Counsel was given the opportunity by the trial court to redact the letters or object to portions of the letters, but Petitioner alleges deficient performance by counsel because he failed to sanitize the letters without a strategic reason. *Id.* Petitioner claims that this failure to redact affected the outcome of trial because the jury heard "extremely prejudicial information concerning Petitioner, both uncharged crimes and privileged attorney-client information." *Id.* at 18.

In correctly addressing the claims of failure to redact or sanitize, trial counsel testified at the post-conviction evidentiary hearing that he intended to exclude the information in the letters and thought that his continued objections were sufficient to protect the record, with strenuous objections to admission of the letters. State Rec. Vol. III of VIII, EHT at pp. 13, 15, 18. Trial counsel testified that after speaking at length with his client, petitioner insisted upon testifying even though he was advised that his prior drug conviction would be revealed to the jury. State Rec., Vol VIII, at pp. 19, 36-37. Related information about petitioner's criminal record was contained in the letters and would be revealed to the jury in view of petitioner's insistence on

testifying.  *Id.* at pp. 18-19.  Further, petitioner fails to show a reasonable probability that but for counsel's actions here, there would have been a different outcome.

Petitioner's final claim of ineffective assistance of counsel alleges that counsel failed to argue the responsive verdict of manslaughter, resulting in a sentence of life imprisonment upon his conviction for committing second degree murder. *Id.* at 19-22. This claim was not raised during the state post-conviction relief process. Petitioner argues that manslaughter would have been an appropriate argument under the facts of the case, and claims that arguing the responsive verdict would have resulted in a lesser sentence. *Id*. at 19. The Magistrate Judge denied this claim with prejudice as procedurally defaulted because it was unexhausted and, if dismissed without prejudice from this Court, the state courts would now find the claim procedurally barred. Rec. Doc. 35 at 29-30. Petitioner contends that he is entitled to a dismissal without prejudice, so that he may exhaust the claim in state court and then return to federal court, with the benefit of a stay and abeyance on his remaining claims. Rec. Doc. 36 at 19. Alternatively, petitioner argues the merits of this claim in response to the determination that petitioner would still not obtain relief if the merits were addressed because he failed to show prejudice under *Strickland*. *Id*. at 19.

"A state prisoner normally must exhaust all available state

remedies before he can apply for federal habeas relief." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing Ex parte Royall, 117 U.S. 241 (1886)); 28 U.S.C. § 2254(b)(1)(A). He must have fairly presented the substance of his claim to the state courts, without presenting new legal theories or factual claims in his federal habeas petition. *Nobles*, 127 F.3d at 420 (internal citations omitted). The Supreme Court explained the doctrine of comity as the basis of this exhaustion requirement:

> Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Rose v. Lundy*, 455 U.S. 509, 518 (1982)(brackets, internal quotation marks, and citations omitted). *Lundy* established the total exhaustion rule, requiring federal district courts to dismiss habeas petitions containing both exhausted and unexhausted claims but giving petitioners the option to resubmit a petition with only exhausted claims or exhaust the remainder of their claims. 455 U.S. at 520.

Although a federal habeas claim has not been actually exhausted, it is considered "technically" exhausted when state relief is no longer available. *Jones v. Jones*, 163 F.3d 285, 296

(5th Cir. 1998).  Similarly, a claim is technically procedurally defaulted "when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred.'" *Nobles*, 127 F.3d at 420 (quoting *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1). In other words, there is no substantial difference between a claim being technically exhausted and technically procedurally defaulted when a petitioner has allowed his state remedies to lapse. *Jones v. Jones*, 163 F.3d at 296. If the remainder of the claims were actually exhausted, the petition need not be dismissed as mixed under *Lundy*; it may be granted or denied without consideration of the merits of the procedurally defaulted claim. *See Nobles*, 127 F.3d at 412. On the other hand, the claim may overcome the procedural bar and may be assessed on the merits "if the petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones*, 163 F.3d at 296 (quoting *Moawad v. Anderson*, 143 F.3d 942, 947 (5th Cir. 1998)).

Petitioner challenged his conviction to the highest state court, with full opportunity to raise any and all claims, but failed to raise the claim that defense counsel did not argue the manslaughter responsive verdict. Therefore, this claim is

unexhausted, and the objections to the Magistrate Judge's recommendation do not dispute this determination. Instead, petitioner argues entitlement to a dismissal without prejudice in order to exhaust the claim in state court and then return to federal court, with the benefit of a stay and abeyance on his remaining claims.

However, petitioner is not entitled to a dismissal without prejudice or habeas relief on this procedurally defaulted claim. If the unexhausted claim were dismissed without prejudice and petitioner were to file a successive application for post-conviction relief in state court, it would be time barred. *See* La. Code Cr. P. Art. 930.8.  Louisiana Code of Criminal Procedure Article 930.8 provides that the application for post-conviction relief must be filed within two years of the date the judgment of conviction and sentence become final unless (1) the facts upon which the claim is based were not previously known to the petitioner or his attorney, or (2) the claim is based on a new judicial interpretation of constitutional law, the new interpretation is retroactive, and the petition is filed within one year of the finality of such ruling. La. Code Crim. Proc. art. 930.8. Persons sentenced to death are exempted from this time limitation. *Id*. Article 930.8 has been found to be a valid procedural bar for the purposes of federal habeas review, *see Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).  Petitioner's

conviction and sentence were final on May 9, 2003.  His unexhausted claim would not fit within any of the exceptions to the two-year time limit in Article 930.8. Accordingly, the claim that counsel failed to argue the responsive verdict of manslaughter is considered to be procedurally defaulted and subject to dismissal with prejudice without consideration of its merits.

Petitioner's objections made no attempt to overcome the procedural bar by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law or a fundamental miscarriage of justice.  He attempts to address the merits of this claim in case this court were to find the claim had been exhausted.  Rec. Doc. No. 36, at 19.

Refraining from arguing the responsive verdict may have been reasonable trial strategy on the part of his trial counsel.  If counsel had believed that the evidence was insufficient to prove second degree murder, and second degree murder was not proven, petitioner could have been acquitted. Counsel may have decided to refrain from arguing manslaughter in order to seek acquittal rather than a lesser verdict, and such a strategic decision would be entitled to deference.  On the other hand, the record contains evidence that the jury was, in fact, given the opportunity to reach a compromise verdict because the verdict sheet contained the lesser offense of manslaughter and the trial judge instructed the jury on the charge of manslaughter.  State Rec. Vol. I of VIII; *see* Jury

17

Instructions on lesser included charge of manslaughter.  Despite petitioner's assertions to the contrary, counsel's failure to argue for the responsive verdict of manslaughter does not establish prejudice under *Strickland*.

At the conclusion of petitioner's objections, he asserts that the cumulative effect of the four deficiencies claimed constitutes a "breakdown in the adversarial process" that renders the result of the state process unreliable.  *Id*. at 23.  Petitioner contends that "nothing about his case triggers a finding of fundamental fairness," he urges this court to extend a cumulative analysis to claims of ineffective assistance of counsel, and asserts that, under a cumulative prejudice test, "there is no doubt that Petitioner's trial counsel was ineffective."  *Id*.

Petitioner then admits that the Fifth Circuit has yet to extend a cumulative analysis to claims of ineffective assistance of counsel, but points to Fifth Circuit applications of cumulative impact analysis in other contexts.  *Id.*  He cites Ninth and Seventh Circuit cases to support his contention that the Fifth Circuit should employ a cumulative prejudice test to claims of ineffective assistance, but provides no binding law to guide this Court.  *Id*. Petitioner's objections conclude by suggesting that the "cumulative effect of these violations of Petitioner's due process rights amounts to a per se violation of his constitutional rights."  *Id*. However, he lacks support for this assertion in the Fifth Circuit,

whose  precedent  must  guide  the  analysis  of  this  petition.
Moreover,  there  has  been  no  showing  of  cumulative  error  or
cumulative impact given the above findings as to all other claims.

The instant petition for habeas relief is denied.


New Orleans, Louisiana, this 7th day of July, 2011.

_____

UNITED STATES DISTRICT JUDGE